**United States District Court**
**District of Massachusetts**

```
_____
                                  )
Erin Haglund,                     )
                                  )
         Plaintiff,               )
                                  )
             v.                   )    Civil Action No.
                                  )    19-11970-NMG
Estee Lauder Companies, Inc.,     )
                                  )
         Defendant.               )
_____ )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from an employment-related dispute between plaintiff Erin Haglund ("plaintiff" or "Haglund") and her former employer Estee Lauder Companies, Inc. ("Estee Lauder" or "defendant"). Pending before the Court is the motion of Estee Lauder to dismiss Haglund's amended complaint.

## I.  Background

Haglund began working for Estee Lauder in January, 2011, as a part-time make-up artist at the Macy's Department Store in Saugus, Massachusetts. During her employment with Estee Lauder, Haglund apparently received favorable performance reviews, several promotions and countless awards and accolades.

-1-

Plaintiff avers that she fell ill in December, 2017, with Bartonella, an illness related to Lyme Disease.  She contends that her supervisor declined her requests to take sick days to attend various doctor's appointments and instead allowed her only to use sick time on an hourly basis to attend appointments. On a few occasions, plaintiff was unable to return to work after appointments and subsequently provided doctors' notes excusing her absence.

In February, 2018, Haglund was notified by her supervisor that her absence resulted in the approval of a "written warning" and that her "job was in jeopardy".  It is unclear whether Haglund ever formally received that written warning.  Shortly thereafter, Haglund exercised her rights pursuant to the Family Medical Leave Act ("FMLA") and took a leave of absence.

When Haglund's FMLA leave expired in May, 2018, she began collecting short-term disability benefits ("STD benefits") from Hartford Insurance Company ("Hartford") which continued through August, 2018.  She unsuccessfully applied for a one-month extension and then applied for long-term disability benefits ("LTD benefits") from Hartford.  That appeal apparently remains pending.

During plaintiff's leave of absence, she provided make-up services at a wedding.  Upon learning that Haglund performed

such services, a member of defendant's Human Resources
Department informed Haglund she was being placed under
investigation and allegedly contacted Hartford regarding
Haglund's eligibility for LTD benefits.  Plaintiff avers that
she was also advised to "reevaluate her employment".  In late
2018 or early 2019, Haglund resigned her employment with Estee
Lauder.

Plaintiff filed a complaint against Estee Lauder in
Massachusetts Superior Court in September, 2019, for
(1) retaliation for exercising protected conduct, in violation
of the FMLA, (2) breach of contract, and (3) breach of the
covenant of good faith and fair dealing.  Shortly after the
complaint was filed, Estee Lauder removed the case to this
Court.

A status conference was convened on December 17, 2019, at
which counsel for plaintiff informed the Court that he was not
yet a member of the Federal Bar but would be soon.  After
counsel was sworn into the Federal Bar, plaintiff filed an
amended complaint, correcting several timing errors in the
original complaint.  Thereafter, defendant moved to dismiss.

## II.   **Motion to Dismiss**

### A.   **Legal Standard**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In considering the merits of a motion to dismiss, the Court may only look to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. Nollet v. Justices of Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 228 F.3d 1127 (1st Cir. 2000).

Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. See Nollet, 83 F. Supp. 2d at 208.

Although a court must accept as true all the factual allegations in a complaint, that doctrine is not applicable to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662 (2009). Threadbare recitals of legal elements which are supported by mere conclusory statements do not suffice to state a cause of

action. Id.  Accordingly, a complaint does not state a claim of
relief where the well-pled facts fail to warrant an inference of
any more than the mere possibility of misconduct. Id. at 1950.

To survive a motion to dismiss, a complaint need not
establish a prima facie case or allege every fact necessary to
prevail at trial. Carrero-Ojeda v. Autoridad de Energia
Electrica, 755 F.3d 711, 718 (1st Cir. 2014).  The prima facie
standard is an "evidentiary standard, not a pleading standard."
Id.  Nevertheless, the elements of a prima facie case, here the
elements necessary to make out a claim of retaliation in
violation of the FMLA, form the "background against which [the
Court's] plausibility determination should be made." Id.
(quoting Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54
(1st Cir. 2013)).  Reference to prima facie elements assists the
Court in its determination of whether the "cumulative effect" of
the factual allegations contained in the complaint states a
plausible claim for relief. Id.

   **B.  Application**

   **1. Counts I, II and III – Violation of the FMLA**

Counts I, II and III of the amended complaint relate to the
FMLA.  Count II alleges that Estee Lauder unlawfully retaliated
against Haglund for exercising a protected right, in violation
of the FMLA.  Counts I and III apparently seek compensatory

-5-

(Count I) and liquidated (Count III) damages for the violation
alleged in Count II.

Damages are remedies, not independent causes of action.
See, e.g., AcBel Polytech, Inc. v. Fairchild Semiconductor
International, Inc. et al., No. 13-13046-DJC, 2014 WL 4656608,
*11 (D. Mass. Sept. 2, 2014) ("[P]unitive damages are a remedy
and not a cause of action . . . . [T]here is no "claim" for
punitive damages."). Consequently, Counts I and III of the
amended complaint do not state causes of action independent of
the FMLA retaliation claim in Count II and will therefore be
dismissed.

Count II alleges that Estee Lauder retaliated against
Haglund for exercising rights protected by the FMLA. The FMLA
forbids an employer from retaliating against an employee for
exercising her statutory rights. Henry v. United Bank, 686 F.3d
50, 55 (1st Cir. 2012). To establish a prima facie case of FMLA
retaliation, a plaintiff must demonstrate that 1) she availed
herself of a protected right under the FMLA; 2) she was
adversely affected by a decision of her employer; and 3) there
is a causal connection between her protected activity and the
adverse action of her employer. See Hodgens v. Gen. Dynamics
Corp., 144 F.3d 151, 161 (1st Cir. 1998). As outlined above,
Haglund need not establish her prima facie case at the pleading

stage. The Court will, however, assess Count II through the "lens" of the prima facie retaliation standard to determine whether Haglund pleads facts sufficient to establish a claim of retaliation. See Carrero-Ojeda, 755 F.3d at 719 ("[T]he elements of a prima facie case are useful 'as a prism to shed light upon the plausibility of a [plaintiff's] claim.'" (quoting Rodriguez-Reyes, 711 F.3d at 54.))

The first element, whether Haglund exercised a right protected by the FMLA, is uncontested. With respect to the second element, Haglund contends that she was adversely affected by Estee Lauder's issuance of a written warning, interference with her long-term disability benefits and other conduct that resulted in Haglund's constructive discharge. Estee Lauder rejoins that Haglund is unable to establish an adverse employment action because she fails to allege that Estee Lauder altered the terms and conditions of her employment.

Estee Lauder misinterprets the standard for FMLA retaliation claims. Whereas a substantive discrimination claim requires a plaintiff to meet the standard outlined by Estee Lauder, a retaliation claim requires only a showing that an employer engaged in an action that "a reasonable employee" would deem "materially adverse". Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67-68 (2006). The employee must

plausibly allege that the action taken by the employer would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." Id.  Although such action need not alter the terms and conditions of employment, it must be "more disruptive than a mere inconvenience or alteration of job responsibilities." Marrero v. Goya of P.R., Inc., 304 F.3d 7, 23 (1st Cir. 2002).

Haglund's allegations, though sparse, are sufficient to meet the low bar of alleging an adverse employment action for purposes of an FMLA retaliation claim.  Specifically, she alleges that Estee Lauder provided her with a written warning (or at least threatened her with one) which, according to Haglund, is the final step before termination.  She further claims that her direct supervisor issued a verbal warning informing Haglund that her job was in jeopardy.

In addition to the written and verbal warnings, Haglund avers that Estee Lauder provided Hartford with misleading information about her training and mitigation of damages in an effort to interfere with her application for LTD benefits. Haglund contends that those actions resulted in her constructive termination.  A reasonable employee would deem the combination of such actions adverse to one's employment.

The third element of a <u>prima facie</u> claim of FMLA
retaliation is causation.  Causation requires a plausible theory
connecting a plaintiff's exercise of an FMLA protected right to
the employer's adverse action. <u>See</u> <u>Germanowski</u> v. <u>Harris</u>, 854
F.3d 68, 73 (1st Cir. 2017).  Haglund apparently rests her
causation claim on the temporal proximity of her FMLA leave and
Estee Lauder's adverse action.  Although temporal proximity is a
factor from which a court can infer an employer's bad motive, it
is insufficient to establish causation, "especially if the
surrounding circumstances undermine any claim of causation."
<u>Carrero-Ojeda</u>, 755 F.3d at 720.

Haglund alleges no facts in support of her theory of
causation aside from proximity.  She fails to explain how
actions taken by Estee Lauder before she exercised her FMLA
rights (such as the written and verbal warnings) can be
retaliatory.  With respect to actions taken after Haglund
exercised her protected rights, the Court discerns no causal
connection aside from an attenuated proximity argument and
plaintiff proffers none.  Proximity alone is insufficient,
particularly where, as here, the allegedly adverse action
occurred either before or several months after Haglund exercised
her FMLA rights.

Considering, as the Court must, the "cumulative effect of the complaint's factual allegations," and the totality of the circumstances surrounding Estee Lauder's allegedly adverse action, the Court concludes that Haglund's complaint does not sufficiently allege that Estee Lauder took an adverse employment action against Haglund because she exercised rights protected under the FMLA.

Accordingly, Haglund has failed to state a plausible claim of FMLA retaliation and Count II of her amended complaint will be dismissed.

### 2. **Count IV – Breach of Contract**

In Count IV of her amended complaint, plaintiff alleges that Estee Lauder breached a contractual duty to her by violating the manual governing employee conduct ("the Employee Manual"). Haglund generally declaims that Estee Lauder breached various clauses in the Employee Manual that outline employee discipline and sick leave. Both parties presume that Massachusetts law governs plaintiff's breach of contract claim and the Court will proceed under the same presumption.

To prevail on a claim for breach of contract under Massachusetts law, a plaintiff must demonstrate (1) the existence of a valid, binding contract, (2) the terms of which defendant breached, (3) which breach caused the plaintiff to

suffer damages. <u>Brooks</u> v. <u>AIG SunAmerica Life Assur. Co.</u>, 480 F.3d 579, 586 (1st Cir. 2007).  To survive a motion to dismiss, a plaintiff must do more than allege, in a conclusory manner, that defendant breached a contractual duty. <u>Buck</u> v. <u>Am. Airlines, Inc.</u>, 476 F.3d 29, 38 (1st Cir. 2007).  Instead, a plaintiff must describe, with "substantial certainty", the specific contractual promise that defendant breached. <u>Id.</u>; <u>see also</u> <u>Doyle</u> v. <u>Hasbro, Inc.</u>, 103 F.3d 186, 194-95 (1st Cir.1996) (Conclusory statements that 'Hasbro and its executives failed to meet their contractual requirement,' are insufficient to satisfy the pleading requirements.").

Plaintiff's bare allegation that Estee Lauder breached "clauses regarding warning and employee discipline and sicknesses" in the Employee Manual is insufficient to state a claim of breach of contract.  As a preliminary matter, plaintiff fails to plead facts sufficient to demonstrate that a contract exists between the parties.  Nor does she explain the particular contractual obligation that Estee Lauder allegedly breached.

Employment in Massachusetts is presumed to be at will unless a party demonstrates the existence of an express or implied contract governing the terms and conditions of employment. <u>Day</u> v. <u>Staples, Inc.</u>, 555 F.3d 42, 58 (1st Cir.

2009).  An implied contract is not created by an employee manual
where the following factors are met:

> (1) the employer retained the right to unilaterally
> modify terms; (2) the terms of the manual were not
> negotiated; (3) the manual stated that it provided
> only guidance regarding the employer's policies;
> (4) no term of employment was specified in the manual;
> and (5) the employee did not sign the manual to
> manifest assent.

Id. at 58-59 (quoting Jackson v. Action for Boston Cmty. Dev.,
Inc., 525 N.E.2d 411, 415-16 (Mass. 1988)).

Applying that five-factor test, the Employee Manual does
not create an implied contract.  Although Haglund contends that
she received a copy of the Employee Manual and signed a form
acknowledging her acceptance of its terms, the remaining factors
weigh against classifying that document as a contract.  Haglund
does not contend that any portion of the Employee Manual was the
product of negotiation with Estee Lauder or that she otherwise
had any input in the modification of terms contained in it.  She
also does not contend that the Employee Manual specified any
term of employment.

With respect to the third factor, plaintiff fails to
address whether the Employee Manual contained any guidance about
relying on its terms or whether it functioned as an employment
contract.  Estee Lauder attached a portion of the Employee
Manual to its motion to dismiss which the Court may properly

consider because it is incorporated by reference in and central to plaintiff's amended complaint. <u>See</u> <u>Fudge</u> v. <u>Penthouse Int'l Ltd.</u>, 840 F.2d 1012, 1015 (1st Cir. 1988) ("[W]hen a plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading.").

The Employee Manual expressly provides that

> [t]he information [provided herein] is intended to provide basic facts and a brief summary of [Estee Lauder's] policies, benefits and other pertinent matter to guide and assist [its employees].

It further provides that nothing contained in the Employee Manual "is intended to be a direct, implied, or inferred contract of employment."  In that same section, the manual explains that the employment relationship is "at-will" and is not limited by any information contained in the Employee Manual.

Considering each of the applicable factors, plaintiff fails to allege that the Employee Manual created a contractual relationship between the parties.  Even if plaintiff could establish such a contractual relationship, she fails to proffer the specific provisions of the document or contractual obligations contained therein that defendant allegedly breached. For those reasons, plaintiff is unable to demonstrate that Estee Lauder breached any contractual obligation and Count IV will be dismissed.

### 3. Count V – Breach of the Covenant
### of Good Faith and Fair Dealing

Haglund's claim that Estee Lauder breached the covenant of good faith and fair dealing fails because she cannot demonstrate the existence of a contractual relationship between the parties. Under Massachusetts law, a claim of breach of the implied covenant of good faith and fair dealing can lie only where there exists a binding contract. Eigerman v. Putnam Invs., Inc., 877 N.E.2d 1258, 1264 (Mass. 2007). Having concluded that no contract between the parties exists, plaintiff cannot maintain a derivative claim for violation of the implied covenant of good faith and fair dealing.

## ORDER

For the forgoing reasons, the motion of defendant Estee Lauder Companies, Inc. to dismiss the amended complaint of plaintiff Erin Haglund (Docket No. 28) is **ALLOWED**.


**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated June 10, 2020